| |
|---|
| **Radunceva v Whelan** |
| 2024 NY Slip Op 34534(U) |
| December 27, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 500736/2014 |
| Judge: Genine D. Edwards |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At Part 80 of the Supreme Court of the State of
New York, held in and for the County of Kings, at
the Courthouse, located at 360 Adams Street,
Brooklyn, New York on the 27th day of December
2024.

P R E S E N T :

Hon. Genine D. Edwards, Justice

-------------------------------------------------------------------x

SVETLANA RADUNCEVA as EXECUTRIX for
the Estate of ALEXANDER DUBOVSKI,
DECEASED,

                                        Plaintiff,

                                                              Index No: 500736/2014

        - against -                                           Decision & Order

RICHARD WHELAN, M.D. JOSEF SHEHEBAR,
M.D., ST. LUKE'S-ROOSEVELT HOSPITAL
CENTER, JINU KIM, M.D., and JONATHAN
EPSTEIN, M.D.,

                                        Defendants.
-------------------------------------------------------------------x

The following e-filed paper(s) read herein:          NYSCEF Doc. No.

Notice of Motion, Affirmation in Support, and Exhibits ...........69-87


        In this action to recover damages for medical malpractice, negligence and lack of

informed consent, Richard Whelan, M.D. ("Dr. Whelan"), Josef Shehebar, M.D. (Dr.

Shehebar"), St. Luke's-Roosevelt Hospital Center ("St. Luke's"), Jinu Kim, M.D. ("Dr. Kim")

and Jonathan Epstein, M.D. ("Dr. Epstein") (hereinafter "defendants") moved for summary

judgment. Plaintiff did not oppose.

[* 1]

Upon due deliberation and consideration, this Court finds that Dr. Kim and Dr. Epstein have established a prima facie case for judgment. Defendants' experts demonstrated that there were no departures from the applicable standards of care in their respective treatment of Alexander Dubovski ("decedent"), during his August 1, 2011 colorectal surgery. The expert affirmations submitted by Dr. Jill Fong ("Dr. Fong") and Dr. Bruce Gingold ("Dr. Gingold") explained that Dr. Kim's and Epstein's role, as attending anesthesiologists for plaintiff's colorectal cancer removal surgery, were limited to inducing general and regional anesthesia and did not involve the positioning of decedent's legs.

Drs. Fong and Gingold opined that the role of an anesthesiologist is limited to protecting the patient's airway and ensuring that the various lines and gauges that are connected to the patient are properly functioning. Anesthesiologists generally defer to the attending surgeon regarding the positioning of the patient. Dr. Fong further highlighted that Dr. Epstein cannot be liable for any alleged improper positioning, as he had already departed from the operating room when decedent was positioned.

The epidural injection administered by Dr. Epstein was properly placed. Dr. Fong opined that if the needle was inserted through the dura matter, then the patient receiving the epidural would experience pain and/or paresthesia. Decedent exhibited neither pain nor paresthesia upon placement of the epidural needle. Dr. Fong explained that the standard of care requires the performance of two tests to ensure that the epidural needle was placed correctly. First, the anesthesiologist must ask the patient if they are experiencing pain or paresthesia. A lack of either indicates that the needle is not in direct contact with any nerve roots. Next, the anesthesiologist must apply aspiration to determine if any blood or cerebrospinal fluid comes out. Lack of blood indicates that the needle is not in a blood vessel, and lack of cerebrospinal

[* 2]

fluid indicates that the needle is outside of the dura matter. The anesthesiologist checks for pain or paresthesia, performs an aspiration test, and then administers a test dose of lidocaine and epinephrine. A properly positioned epidural will garner minimal neurological response to the test dose. If the needle is in a blood vessel, the test dose will cause a spike in the heart rate. If the needle is through the dura matter, it will cause an inappropriate sensory and/or motor blockade.

Here, after Dr. Epstein placed the epidural, decedent did not complain of any pain or paresthesia. The aspirate was devoid of blood or cerebrospinal fluid. Finally, Dr. Epstein received appropriate responses from decedent when he administered the test dose of lidocaine and epinephrine. Thus, Dr. Fong opined that Dr. Epstein met the standard of care in the placement of the epidural needle and catheter.

As to Dr. Whelan, Dr. Gingold opined that his chosen use of leg positioning – the modified lithotomy position – was correct for this operation, as the surgical team needed to be able to work between the patient's legs and met the standard of care. Dr. Gingold posited that while there are some nerves that are at an increased risk of positioning injury when using the modified lithotomy position, the femoral nerve is generally not considered to be one of them as the positioning protects the nerve from stretch and compression injuries. Dr. Gingold further opined that Dr. Whelan's choice to use the Bookwalter Retraction System and the St. Mark's Pelvic Retractors were necessary for this operation. The intraoperative retractors allowed Dr. Whelan to pull parts of the anatomy away so that he obtained both visualization and access to the tumor. Dr. Gingold propounded that the use of the intraoperative retractors likely caused the injury to the left femoral nerve. He explained that the nature of the surgery required the

[* 3]

retractors to pull in a way that caused either compression or a stretch injury to the left femoral nerve.

But none of defendants' experts explained what amount of pulling, if any, is an excessive amount, or the risk of femoral nerve damage due to colorectal surgery. Indeed, Dr. Howard Sander ("Dr. Sander") opined that decedent's electromyography report, which showed evidence of a severe left femoral neuropathy, was compatible with the contention that the injury stemmed from stretch or compression of the femoral nerve. Moreover, Dr. Whelan testified that the "retraction and dissension in the deep pelvis to get the second metastasis out of that area requires someone standing in that position to give [] the retraction necessary and the exposure to do the operation." Dr. Whelan indicated that the person doing the retraction would have been "[him]… Dr. Shehebar… [or other present doctors]." Thus, issues of fact remain regarding whether Dr. Whelan deviated from the standard of care. *Lalanne v. Nyack Hosp.*, 45 A.D.3d 645, 846 N.Y.S.2d 257 (2d Dept. 2007).

However, Dr. Shehebar was a resident at the time of the operation and did not exercise any independent medical judgment. Established caselaw provides that a resident cannot be liable for malpractice where the attending surgeon's directions did not so greatly deviate from normal practice insomuch that the resident should be held liable for failing to intervene. *Tsocanos v. Zaidman*, 180 A.D.3d 841, 118 N.Y.S.3d 219 (2d Dept. 2020).

Defendants showed through the medical records and testimony that "plaintiff was informed of the reasonably foreseeable risks, benefits, and alternatives to the [colorectal surgery], and that a reasonably prudent patient in the plaintiff's position would not have declined to undergo the surgery had he or she been fully informed." *Ciceron v. Gulmatico*, 220 A.D.3d 732, 197 N.Y.S.3d 556 (2d Dept. 2023). Plaintiff failed to oppose the motion.

[* 4]

Accordingly, it is

**ORDERED** that defendants' motion for summary judgment is granted only to the extent

of dismissing all claims as against Josef Shehebar, M.D., Jinu Kim, M.D. and Jonathan Epstein,

M.D., and dismissing plaintiff's cause of action for lack of informed consent, the rest of the

motion is denied, and it is further

**ORDERED** that the caption is amended as follows:

------------------------------------------------------------------------x

SVETLANA RADUNCEVA as EXECUTRIX for
the Estate of ALEXANDER DUBOVSKI,
DECEASED,

                              Plaintiff,


            - against -


RICHARD WHELAN, M.D. and
ST. LUKE'S-ROOSEVELT HOSPITAL
CENTER,

                              Defendants.
------------------------------------------------------------------x

and it is further

**ORDERED** that all remaining parties shall appear for an Alternative Dispute Resolution

conference on March 18, 2025, at 10:00 AM, and it is further

[* 5]

**ORDERED** that defendants are directed to electronically serve a copy of this Decision and Order with notice of entry on counsel for defendants and to electronically file and affidavit of service thereof with the Kings County Clerk.

This constitutes the Decision and Order of this Court.

For Clerks use only

MG___

MD___

Motion Seqs. #: 4

ENTER

_____ J.S.C.

**HON. GENINE D. EDWARDS**

[* 6]